

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2017

**STEFFON HODGES v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-16-46  Roy B. Morgan, Jr., Judge**

———————————————————

**No. W2016-00895-CCA-R3-PC**

———————————————————

The Petitioner, Steffon Hodges, appeals the denial of his petition for post-conviction relief by the Madison County Circuit Court.  On appeal, the Petitioner argues that his guilty plea was involuntary and unknowing because he received ineffective assistance of counsel and was not advised of his rights before entering his guilty plea.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the Petitioner, Steffon Hodges.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner was charged with one count of aggravated robbery, and a jury trial was held on March 3, 2015.[1]  At the conclusion of trial, the jury was unable to reach a verdict, and a mistrial was declared.  On the same day as the jury trial, the Petitioner entered a guilty plea to one count of attempted aggravated robbery.  Pursuant to the negotiated plea agreement, the Petitioner pled guilty as a Range II offender and received an effective sentence of ten years' incarceration to be served at thirty-five percent.

_____

[1] Before the jury trial, the Petitioner filed a motion to substitute his counsel.  A hearing was held on the Petitioner's motion, which the trial court subsequently denied, and the trial proceeded as scheduled.

**Guilty Plea Hearing.** At the March 3, 2015 guilty plea hearing, the Petitioner's counsel, on behalf of the Petitioner, stipulated to the facts presented during the trial.[2] The trial court explained that, pursuant to the plea agreement, the Petitioner would be sentenced as a Range II offender instead of a Range I offender with a release eligibility of thirty-five percent. The trial court explained that release eligibility meant that the Petitioner had to serve a certain percentage of his sentence before he was eligible for release but that "it's not an automatic release." The trial court also explained to the Petitioner the rights he would waive by pleading guilty, including his right to plead not guilty, his right to a jury trial and a speedy trial, his right to counsel, the right to confront and cross-examine witnesses, the right to subpoena witnesses, the right to remain silent, and the right to an appeal. The trial court also explicitly stated that the Petitioner was entitled to another jury trial. The Petitioner indicated that he understood all the rights he was waiving by pleading guilty and that he understood the plea agreement. Upon concluding that the Petitioner's guilty plea was knowing and voluntary, the trial court accepted the Petitioner's guilty plea.

The Petitioner filed a pro se petition for post-conviction relief on March 2, 2016, alleging several grounds of ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. The Petitioner was appointed counsel, and appointed counsel did not file an amended petition for post-conviction relief. Appointed counsel filed a "Certification of Counsel" stating that he had reviewed the Petitioner's pro se petition and "investigated the possible constitutional violations alleged by the Petitioner."

**Post-Conviction Hearing.** At the April 26, 2016 post-conviction hearing, the Petitioner testified that trial counsel was appointed to represent him and that his jury trial resulted in a hung jury. After his jury trial, the Petitioner entered a guilty plea to attempted aggravated robbery and received a sentence of ten years at thirty-five percent. The Petitioner testified that after entering his guilty plea, he began to research the law and believed that his guilty plea was the result of "fear and ignorance of the law." The Petitioner stated that he had no prior experience with the criminal justice system and had no prior criminal history. He also testified that he was "misled into pleading to a higher range" and that trial counsel was ineffective because he allowed the Petitioner to plead outside his range. The Petitioner agreed that he did testify at the guilty plea hearing that he understood what he was doing and that he was satisfied with trial counsel's representation.

The Petitioner reiterated that he was "ignorant to the law" when he entered his guilty plea, and after going through a jury trial, he was very stressed and scared. The

---

[2] The record does not contain a recitation of the facts presented during the Petitioner's trial.

Petitioner testified that trial counsel failed to "advise and explain" the consequences of a hung jury, and he did not know that he had the right to a second jury trial. He explained that after the hung jury, trial counsel told him about the plea agreement, and there was no discussion about a second trial. The Petitioner also testified that trial counsel failed to explain his parole eligibility, and did not discuss how long he would be incarcerated and that the Petitioner was misled into pleading guilty. Specifically, he claims that the sentence he received, "carries more time" than the sentence he would have received had he gone to trial and that he did not understand "how much time [he] would have to do on the sentence." The Petitioner also testified that trial counsel should have asked the State for an alternative sentence after his charge was "dropped to a lesser included offense." At the conclusion of his direct examination, the Petitioner stated that he was scared when he committed the offense, that he had no prior convictions, and that his "situation . . . was unjust."

On cross-examination, the Petitioner acknowledged that, at the guilty plea hearing, the trial court told him that he had the option of having another jury trial. The Petitioner also acknowledged that the plea agreement, which he signed, stated that "[t]he Defendant acknowledges he is pleading outside his range as a Range II instead of a Range I." The Petitioner clarified that he knew that he was pleading outside of his range but that he did not know why he was pleading outside of his range. The Petitioner also agreed that he was informed of his constitutional rights by the trial court before entering his guilty plea. The Petitioner testified that once he was in custody, he realized that he "might have got a better deal" and that was why he filed his petition for post-conviction relief.

Trial counsel testified that he had been licensed to practice law for twelve years, and he worked for the Public Defender's Office. He testified that he was appointed to represent the Petitioner "at the end of 2014." After he was appointed, trial counsel filed a motion for discovery and met with the Petitioner prior to trial. At the conclusion of the Petitioner's trial, which resulted in a hung jury, trial counsel believed that he approached the Assistant District Attorney and began negotiating a plea agreement. At the end of those negotiations, trial counsel informed the Petitioner that he was being offered a plea of ten years at thirty-five percent. Trial counsel testified that he informed the Petitioner of his right to a second jury trial but that the Petitioner wanted to accept the plea deal. Trial counsel stated that he told the Petitioner he was pleading outside of his sentencing range, and he advised the Petitioner of his constitutional rights before he plead guilty.

Trial counsel testified that, in his opinion, the Petitioner knew and understood the plea agreement and that he was pleading outside his range. Trial counsel further explained that it was his normal practice to explain the consequences of entering a guilty plea and that he advises his clients of their constitutional rights before they enter their guilty plea. Furthermore, trial counsel testified that the Petitioner was "very eager" to

sign the plea agreement, and he was "hopeful that the [c]ourt would accept it." Trial counsel also stated if the Petitioner had wanted a second trial, that trial counsel would have "retried" the case.

On cross-examination, trial counsel testified that he discussed the Petitioner's parole eligibility and the difference between an eighty-five percent release eligibility and a thirty-five percent release eligibility. In response to the Petitioner's assertion that trial counsel should have asked for an alternative sentence, trial counsel stated that the aggravated robbery is a "non-probatable" offense so the State would not offer an alternative sentence. Trial counsel testified that the "best that [he] could do was basically what we got," which was a guilty plea to the lesser included offense and a release eligibility of thirty-five percent. Trial counsel reiterated that he told the Petitioner that he had the right to another jury trial.

At the conclusion of the hearing, the post-conviction court denied the petition for post-conviction relief, stating that the Petitioner "failed to carry the burden of proof by clear and convincing evidence." Specifically, the post-conviction court found trial counsel's testimony credible and that the guilty plea transcript showed that the Petitioner was informed of his rights before entering his guilty plea. Moreover, the post-conviction court found that the Petitioner was told that he was pleading outside of his range and the trial court also explained his parole eligibility. Additionally, the post-conviction court agreed that trial counsel explained to the Petitioner the consequences of entering a guilty plea. On May 2, 2016, the post-conviction court filed a written order denying the petition and found that the Petitioner's guilty plea was voluntary and knowing and that the Petitioner "simply wanted 'to get a better deal.'" It is from this order that the Petitioner now appeals.[3]

## ANALYSIS

On appeal, the Petitioner argues that his guilty plea was involuntary and unknowing because trial counsel failed to explain the consequences of entering a guilty plea. Specifically, he claims that trial counsel was ineffective because he "failed to advise and explain the consequences and options following the hung jury," that he was "misled into pleading outside his standard sentencing range," and that he pled guilty due to "fear and ignorance" of the law. The State argues that trial counsel advised the Petitioner of his constitutional rights, explained to the Petitioner that he would be

---

[3] As noted by the State, the Defendant's notice of appeal, filed April 29, 2016, was premature. However, Tennessee Rule of Appellate Procedure 4(d) states, "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." See Tenn. R. App. P. 4(d).

- 4 -

pleading outside of his range, and that the Petitioner received effective assistance of counsel. Upon review, we agree with the State.

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient

performance prejudiced the defense.  Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms."  Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936).  Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Id. at 370 (quoting Strickland, 466 U.S. at 694).  In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial.  Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689).  Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."  Strickland, 466 U.S. at 688-89.  However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'"  House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner argues that trial counsel was ineffective for failing to explain "the consequences and options following a hung jury" and that he was unaware that he had the "right to another trial."  At the post-conviction hearing, trial counsel testified that he typically advises his clients of their constitutional rights before they enter their guilty plea and that he advised the Petitioner of his rights, including the right to a second jury trial.  Trial counsel further testified that he would have "retried" the case if the Petitioner wanted a second trial.  However, the Petitioner told trial counsel that he wanted to accept the plea agreement, and the Petitioner was "very eager" to sign the plea agreement.  The post-conviction court accredited trial counsel's testimony, and we do not review a post-conviction court's determination of a witness's credibility.  See Vaughn, 202 S.W.3d at

115.  Furthermore, the guilty plea transcript shows that the trial court told the Petitioner that he had the right to a second trial, and the Petitioner was advised of his rights before entering his guilty plea.  The record fully supports the post-conviction court's findings, and the Petitioner is not entitled to relief.

Next, the Petitioner argues that his guilty plea was involuntary and unknowing because he was "misled into pleading outside his standard sentencing range" and that he pled guilty due to "fear and ignorance" of the law.  He also argues that trial counsel failed to explain his parole eligibility before entering his guilty plea.  The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo.  Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010).  To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977), superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)).  "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]"  Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1).  When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Lane, 316 S.W.3d at 562 (quoting Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009)).  If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void.  Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . . "  Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).  In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

The Petitioner argues that trial counsel failed to explain that he was pleading outside of his range and that he was "misled" into entering his guilty plea. He also argues that trial counsel failed to explain his parole eligibility. Trial counsel testified that after the hung jury, he began plea negotiations with the Assistant District Attorney. Trial counsel conveyed the plea offer to the Petitioner and explained that he would be pleading outside his sentencing range and would receive a sentence of ten years at thirty-five percent. Trial counsel testified that the Petitioner was "very eager" to accept the plea agreement. Trial counsel also explained the Petitioner's parole eligibility but did not guarantee exactly when the Petitioner would be released. Again, the post-conviction court accredited trial counsel's testimony, and we will not disturb that finding. See Vaughn, 202 S.W.3d at 115. Moreover, on cross-examination, the Petitioner testified that he knew he was pleading outside his range and that his sentence would be ten years at thirty-five percent.

Furthermore, at the guilty plea hearing, the trial court explained to the Petitioner multiple times that he was pleading outside of his range and explained exactly what that meant. During the guilty plea hearing, the Petitioner did not ask any questions or indicate that he did not understand what he was doing. Moreover, the Petitioner signed the "Request [f]or Acceptance [o]f Plea [o]f Guilty [And] Petition [t]o Waive Trial [b]y Jury [a]nd [t]o Waive Appeal" which stated that the "Defendant acknowledges that he is pleading outside of his range as a Range II instead of Range I." The record supports the post-conviction court's determination that the Petitioner's guilty plea was voluntary and knowing. The Petitioner is not entitled to relief.

Finally, the Petitioner contends that he pled guilty due to "fear and ignorance" of the law. As we have previously established, the record shows that the Petitioner understood what he was doing when he entered his guilty plea. The guilty plea transcript shows that the Petitioner was informed of the rights he would waive by pleading guilty, and trial counsel testified that he also informed the Petitioner of his rights. Here, the record clearly shows that "his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). Moreover, the Petitioner testified during the post-conviction hearing that he filed his petition for post-conviction relief in order to obtain "a better deal." The record supports the post-convictions court's determination, and the Petitioner is not entitled to relief.

## CONCLUSION

Based on the above reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE